

FILED
Jan 22, 2019
9:05 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Aliceia Hollis | ) Docket No. 2016-03-0298 |
| | ) |
| v. | ) State File No. 23307-2016 |
| | ) |
| Komyo America, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Lisa A. Lowe, Judge | ) |

### Affirmed and Certified as Final – Filed January 22, 2019

The employee alleged she suffered injuries to her back, including a lumbar disc herniation, while working in the course and scope of her employment. Although the employer initially accepted the compensability of the employee's accident, provided a panel of physicians, and authorized certain medical treatment, it later denied that her disc herniation was causally related to the work accident. As a result, the employee sought medical treatment on her own. Following a compensation hearing, the trial court concluded the employee had proven she suffered a work-related lumbar strain but had not met her burden of proving by a preponderance of the evidence that the lumbar disc herniation arose primarily out of and in the course and scope of her employment. As a result, the court concluded the employer was responsible only for "ongoing reasonable and necessary medical care for her work-related lumbar strain," and it denied any other benefits. The employee has appealed. We affirm the trial court's order and certify it as final.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

H. Douglas Nichol, Knoxville, Tennessee, for the employee-appellant, Aliceia Hollis

Chris G. Rowe, Brentwood, Tennessee, for the employer-appellee, Komyo America

### Factual and Procedural Background

Aliceia Hollis ("Employee"), a forty-six-year-old resident of Loudon County, Tennessee, worked for Komyo America ("Employer") as a material handler. She alleged

she injured her low back on January 18, 2016, when a stack of vehicle hoods tipped over and struck her back. Her supervisor testified that although he did not witness the accident, he approached Employee immediately after it had occurred, saw the vehicle hoods on the ground, and saw Employee holding her lower back. Employer accepted the accident as compensable and provided a panel of physicians, from which she selected Dr. John Sanabria with Lakeway Urgent Care ("Lakeway").

Employee was seen at Lakeway on the date of the accident, but the record is unclear whether Dr. Sanabria examined her at that time.[1] She complained of left lower back pain that she described as "shooting and burning." She was diagnosed with a lumbar and pelvis sprain and was released to return to work with restrictions. Employee returned to Lakeway on several more occasions. In a February 19, 2016 report, a nurse practitioner noted Employee described her symptoms as going "down the back of the leg and into the big toe." She underwent a lumbar MRI on March 2, 2016, which revealed a "broad-based left paracentral/intraforaminal disc protrusion" at L4-5 resulting in "minimal effacement" of the thecal sac and "mild posterior displacement of the traversing left L5 nerve root." The only record indicating Dr. Sanabria's direct involvement in Employee's care is dated March 7, 2016, at which time Dr. Sanabria reviewed the MRI results. He reiterated the diagnosis of a lumbar sprain and described it as "stable/improved." He released her to return to work without restrictions and opined that the disc herniation and related symptoms were not primarily caused by the work accident and were instead related to pre-existing, degenerative changes. He placed her at maximum medical improvement on that date.

Thereafter, Employee sought treatment on her own from her primary care physician, Dr. Karmi Patel, who referred her to a neurosurgeon, Dr. Kent Sauter. On April 8, 2016, Dr. Sauter diagnosed a left L4-5 disc herniation with radiculopathy. He recommended surgery, which was performed on April 27, 2016. He released her to return to work with restrictions on July 18, 2016. He also referred her to Dr. Elmer Pinzon for additional treatment.

Following an expedited hearing, the trial court denied Employee's request for benefits, concluding that although Employee was a "credible witness," she had not offered sufficient expert medical evidence to support a finding that she was likely to prevail at a hearing on the merits in proving that her work accident was the primary cause of her lumbar condition. That order was not appealed.

In preparation for a compensation hearing, the parties deposed Dr. Sanabria, Dr. Pinzon, and Dr. Sauter. Dr. Sanabria, who was the authorized panel physician, testified that he sees all patients "in conjunction with [his] mid-levels and so one of the visits or

---

[1] The January 19, 2016 record indicates that "E. Marks" discharged her and that the record was "signed off electronically by John Sanabria, M.D." Employee testified Dr. Sanabria did not see her on that visit.

more than one of the visits [he] was involved with her care." He later described the "mid-levels" as "a nurse practitioner and a [physician's assistant]." He also explained he "personally reviewed" all reports and was "involved in the patient's care," including formulating treatment plans. In reviewing his records, Dr. Sanabria noted Employee exhibited signs of symptom magnification, including "subjective complaints of pain [that] are inconsistent and out of proportion to the clinical exam." As to the issue of medical causation, Dr. Sanabria opined it was "more likely than not" and "more than 50 percent" that Employee had a chronic, degenerative condition. He testified these changes were not related to her work injury. He advised Employee she should follow up with her primary care physician for treatment of her condition "as a non-work related issue." On cross-examination, Dr. Sanabria admitted a neurosurgeon would be "more qualified" to determine whether someone needs back surgery, but he would not agree a neurosurgeon is more competent to determine medical causation. When asked about the opinions expressed by other physicians in this case, Dr. Sanabria stated, "I maintain my assertion that the issue she has at L5 is not more than 51 percent related to her complaints that she was having."

Dr. Pinzon, a physical medicine and rehabilitation specialist, testified he believed the work accident caused the back problems, the ruptured disc, and the need for surgery. He further testified he based his opinion on "Dr. Sauter's notes that we reviewed, the patient's history, and . . . the review of the medical records provided." On cross-examination, he acknowledged his opinion was, in part, an assumption "given the fact that she had not reported any previous lumbar pathology." He further admitted Employee did not report to him a history of low back pain as documented in other medical records.

Dr. Sauter, a neurosurgeon, testified he believed her disc herniation and need for surgery were "related to the incident of the hoods falling on her and her twisting to try to dodge them to get out of the way. I think it is more likely than not that that was what caused her to have the disc rupture and the disc herniation and the leg pain." He clarified that was his opinion "to a reasonable degree of medical certainty and more likely than not." On cross-examination, Dr. Sauter acknowledged he does not treat workers' compensation patients in his current practice. With respect to the issue of medical causation, he stated, "she told me what causation was. I wasn't terribly concerned with causation as far as wanting to treat her. Causation was incidental to what I needed to do for her at that point." He then explained he considered whether Employee's explanation of the cause of her symptoms was "reasonable," and he concluded it was and "accept[ed] it as causation." Finally, Dr. Sauter admitted that aspects of the history given to him by Employee with respect to prior episodes of low back pain were "inaccurate."

Following the compensation hearing, the trial court reviewed the medical proof and noted that, because Dr. Sanabria was the authorized panel physician, his opinion on the issue of causation is presumed correct. The court then determined the causation opinions offered by Dr. Sauter and Dr. Pinzon failed to rebut Dr. Sanabria's causation

opinion by a preponderance of the evidence. It therefore denied Employee's request for benefits related to the disc herniation, but it ordered Employer to provide "ongoing reasonable and necessary medical care for her work-related lumbar strain." No disability benefits were awarded. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

**Analysis**

At a compensation hearing where the parties have arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is entitled to the requested benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). This burden of proof requires the employee to establish that the injury for which benefits are sought is a compensable injury as contemplated by the statute. To be compensable, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2018). In order to establish that an injury arises primarily out of the employment, the employee must show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or

possibility." Tenn. Code Ann. § 50-6-102(14)(D). The opinion of an authorized physician selected from a panel pursuant to Tennessee Code Annotated section 50-6-204(a)(3) is "presumed correct" on the issue of causation, but such an opinion is rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E).

Also, it is well-established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). Thus, when medical opinions conflict, as in this case, the trial judge "must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). We will not substitute our determination of the weight to be accorded an expert opinion absent an abuse of discretion by the trial judge. *Lovlace v. Copley*, 418 S.W.3d 1, 16-17 (Tenn. 2013).

In the present case, Employee argues the trial court incorrectly evaluated the expert medical proof, failed to consider the circumstances of the examinations conducted by each expert, and failed to consider the relative qualifications of the experts. Employee further argues the trial court unfairly discounted Dr. Sauter's causation opinion because he relied on Employee's account of what caused her symptoms and considered whether it was a "reasonable" explanation. Employee counters that physicians rely on a patient's history "routinely" and, citing *Phillips v. A & H Construction Co.*, 134 S.W.3d 145, 150 (Tenn. 2004), argues that, "under Tennessee law, all reasonable doubt[] as to the causation of an injury and whether the injury arose out of the employment should be resolved in favor of the employee."

In its order, the trial court considered the relative qualifications of the experts and implicitly credited Dr. Sanabria's testimony that he was "equally qualified to determine causation." The trial court further considered Employee's argument that Dr. Sanabria never conducted a full examination personally, but emphasized his testimony that he was "directly involved in [her] care." Moreover, the trial court noted Employee did not return to Dr. Sanabria after being placed at maximum medical improvement, never requested another visit, and did not ask Employer for a second opinion before seeking care on her own. Finally, the trial court explained that Dr. Sanabria's opinion was entitled to a presumption of correctness that must be overcome by a preponderance of the evidence.

In contrast, the trial court noted Dr. Sauter did not document any clinical findings of radiculopathy and relied on the patient to determine "what causation was." The trial court implicitly rejected Dr. Sauter's explanation that if an injured worker's description of the work accident and resulting symptoms sounded "reasonable," he accepted it as the cause of the condition. The trial court further concluded neither Dr. Sauter's nor Dr.

5

Pinzon's testimony rebutted the presumption of correctness attributable to Dr. Sanabria's causation opinion by a preponderance of the evidence. We agree.

Finally, Employee urges us to resolve all reasonable doubt as to causation in her favor. Although that legal principle was a significant aspect of pre-reform law based on the "remedial" nature of the statute then in effect, *see* Tenn. Code Ann. § 50-6-116 (2012) ("this chapter is declared to be a remedial statute"), the 2013 Workers' Compensation Reform Act changed this analysis. Tennessee Code Annotated section 50-6-116 (2018) mandates that for dates of injury after July 1, 2014, "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and . . . shall not be construed in a manner favoring either the employee or the employer." The Tennessee Supreme Court's Special Workers' Compensation Appeals Panel addressed this issue in *Willis v. All Staff*, No. M2016-01143-SC-R3-WC, 2017 Tenn. LEXIS 455 (Tenn. Workers' Comp. App. Panel Aug. 3, 2017):

> Tennessee Code Annotated section 50-6-116, which previously required a liberal construction of the workers' compensation law, has been amended to now provide that the workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction[,] and this chapter shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2014). Employee's argument, based on *Phillips v. A & H Constr. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004), and decisions preceding and following it, that all reasonable doubts concerning causation should be construed in his favor, is without merit. As already explained, the statutory language at issue in *Phillips* and other decisions enunciating this principal has been replaced by the statutory language quoted above.

*Id.* at *11-12; *see also Pope v. Nebco of Cleveland, Inc.*, No. E2017-00254-SC-R3-WC, 2018 Tenn. LEXIS 146, at *29 (Tenn. Workers' Comp. Panel Jan. 16, 2018) ("we are guided by the general principle that workers' compensation statutes 'shall not be remedially or liberally construed'"). In conjunction with this directive, we must also consider that the findings and conclusions of a trial court are presumed correct "unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7). In the present case, we conclude the trial court did not abuse its discretion in weighing the expert testimony, especially considering the presumption of correctness attributable to Dr. Sanabria's causation opinion.

## Conclusion

For the foregoing reasons, the decision of the trial court is affirmed, and the trial court's order is certified as final.